UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERIK WHIPPLE,

    Plaintiff,

v.

YVONNE BRANTLEY,
in her Individual capacity,

    Defendant.
_____/

Case No. 24-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, MERIK WHIPPLE, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, YVONNE BRANTEY, in her Individual capacity, stating as follows:

### COMMON ALLEGATIONS

1. That Plaintiff is a resident of the County of Genesee, State of Michigan and is otherwise domiciled in the State of Michigan.

1

2. That upon information and belief, Defendant Yvonne Brantley is a resident of the County of Bay, State of Michigan and is otherwise domiciled in the State of Michigan.

3. That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4. That this Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

5. That on or about January 14, 2018, Plaintiff began working for the Michigan State Police.

6. That upon hire, Plaintiff attended the 134th Trooper Recruit School.

7. That following graduation from the training academy, Plaintiff received an assignment to the MSP Flint Post.

8. That throughout Plaintiff's career, he has received numerous awards, including, but not limited to the Cpl. Samuel A. Mapes Criminal Patrol and investigation citations, Citation for Meritorious Service, Citations for Professional Excellence, and Lifesaving Citations.

9. That during the course of Plaintiff's career, he has been appointed Acting Sergeant on two occasions, receiving that appointment over troopers with greater seniority.

10. That most recently, Plaintiff has worked for the Flint Area Narcotic Group.

11. That at all times material hereto, Plaintiff performed his job duties in a satisfactory and/or above-satisfactory manner.

12. That in the summer of 2022, Plaintiff was under the supervision of Sergeant Jared Chiros.

13. That at that time, Plaintiff and three other troopers attempted to transfer to a different shift to avoid continued supervision by Sgt. Chiros.

14. That due to four troopers attempting to leave at once, the move came to the attention of command staff.

15. That Plaintiff was subsequently interviewed by Defendant Brantley, who was the MSP Flint Post Commander.

16. That Plaintiff had informed Defendant Brantley that he was switching shifts to avoid Sgt. Chiros as he had been engaging in abusive behaviors, blackmail, retaliation, and creating a hostile work environment.

17. That despite reporting such misbehavior, Defendant Brantley failed to investigate or otherwise remediate Plaintiff's complaints.

18. That after approximately six (6) months, Plaintiff, however, was required to rejoin Sgt. Chiros' squad.

19. That also in 2022, numerous employees of the Michigan State Police

were socializing to celebrate Sgt. Chiros' birthday.

20. That on said occasion, the celebration occurred at The Barn, a local bar.

21. That on said occasion, Plaintiff went into a restroom and was followed by an irate Sgt. Chiros.

22. That Sgt. Chiros expressed to Plaintiff how upset he was at Plaintiff for leaving the squad and began pushing Plaintiff.

23. That Sgt. Chiros' behavior escalated and he struck Plaintiff in the chest multiple times.

24. That Sgt. Chiros' behavior constituted an assault and/or battery under Michigan law.

25. That as Plaintiff attempted to remove himself from the situation, other coworkers had to restrain Sgt. Chiros.

26. That once Plaintiff broke free from the altercation, he left as quickly as he could, fearing further attack or retaliation if he had defended himself.

27. That the following day, Sgt. Chiros was bragging about attacking Plaintiff to other members of the department.

28. That Sgt. Chiros continued to act in a hostile and intimidating manner toward Plaintiff.

29. That for example, on one occasion, Plaintiff had called into work due to an illness; shortly after Plaintiff's shift had been scheduled to begin, Sgt. Chiros

showed up at Plaintiff's residence, unannounced and uninvited, while Sgt. Chiros was on duty.

30. That as another example, on occasions, Sgt. Chiros would manipulate the schedule to force Plaintiff to work a shift doubled up with him.

31. That on or about May 12, 2023, Sgt. Chiros was suspended from the Michigan State Police.

32. That on or about August 9, 2023, Plaintiff was interviewed by Detective First Lieutenant Mark Anderson as part of a criminal investigation into Sgt. Chiros' unlawful behavior.

33. That during said interview, Plaintiff reported that Sgt. Chiros had assaulted and/or battered Plaintiff at The Barn.

34. That Plaintiff reported Sgt. Chiros' violation of the Michigan Penal Code to D/F/Lt. Anderson.

35. That Plaintiff further reported that he was concerned of retaliation against him and his family.

36. That on or about August 14, 2023, Plaintiff learned that he had been placed on the Genesee County *Brady-Giglio* list.

37. That a *Brady-Giglio* list is a list compiled at prosecutor's offices containing the names and details of law enforcement officers who have sustained incidents of untruthfulness or lack of candor placing their credibility into question

and requiring that said information be disclosed to the criminal defendant.

38. The *Brady-Giglio* list arises out of two U.S. Supreme Court cases: (1) *Brady v. Maryland*, 373 U.S. 83; 83 S. Ct. 1194 (1963), which requires the prosecution to turn over all exculpatory evidence to the accused and includes evidence that may be used to impeach the prosecution's witnesses, such as police officers; and (2) *Giglio v. United States*, 405 U.S. 150; 92 S. Ct. 763 (1972), which determined that the reliability of a witness may be determinative of guilt or innocence and requires disclosure of all evidence effecting credibility.

39. That placement on such a list makes it virtually impossible to act as a law enforcement officer within the jurisdiction as prosecutors will frequently decline to pursue criminal charges filed by officers on the list and will avoid calling officers on the list as witnesses.

40. That during this time period, individuals from the Genesee County Prosecutor's Office noted that they were unable to write anything for law enforcement officers on the list, questioned whether arrests made by those individuals were legal, and acknowledged that the office might have to dismiss charges based on the inability of certain officers to testify.

41. That Plaintiff was unaware of why he had been placed on the list.

42. That Karen Hanson, Managing Assistant Prosecuting Attorney, had informed another trooper that Defendant Brantley had reported to Tammy Phillips,

Chief Assistant Prosecuting Attorney, that Plaintiff and other troopers had lied during their internal affairs interviews regarding Defendant Chiros.

43. That Ms. Hanson further reported that Defendant Brantley refused to give specifics and, as such, everyone who participated in the internal affairs interviews against Defendant Chiros were placed on the *Brady-Giglio* list.

44. That Defendant Brantley's allegations that Plaintiff and other troopers had lied during an internal affairs investigation were defamatory, fabricated, and malicious.

45. That Plaintiff is unaware of the total time he spent on the *Brady-Giglio* list.

46. That Defendant Brantley caused Plaintiff to be placed on the *Brady-Giglio* list in retaliation for his reporting of Sgt. Chiros's assault and/or battery.

47. That Defendant's actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

48. That Defendant's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

49. That Defendant's actions constitute a denial of the equal protections of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

50. That Defendant's actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

51. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

52. That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

53. That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable pursuant to statute, court rule, and/or the common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – FREE SPEECH RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, 42 U.S.C. § 1983

54. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 53 of his Common Allegations, word for word

and paragraph for paragraph, as if fully restated herein.

55. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

56. That the First Amendment to the United States Constitution provides a right to freedom of speech and expression. U.S. CONST. amend. I; *Keyishian v. Board of Regents*, 385 U.S. 589, 605-606; 87 S. Ct. 675 (1967).

57. That at all times material hereto, Defendant acted under the color of State law.

58. That Plaintiff engaged in constitutionally protected speech or conduct.

59. That Plaintiff engaged in constitutionally protected speech or conduct by reporting Sgt. Chiros' assault and/or battery of himself.

60. That said speech addresses a matter of public concern as it is a matter of public concern whether law enforcement officers are conducting themselves lawfully in the performance of their duties. *Huber v. Leis*, 704 F. Supp. 131, 134 (S.D. Ohio 1989); *Marohnick v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

61. That Plaintiff's interest in said speech outweighs any interest the Michigan State Police may have in regulating said speech, if any.

62. That Defendant had knowledge of Plaintiff's protected activity.

63. That Defendant took adverse action against Plaintiff, including, but not

limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list.

64. That Defendant's actions against Plaintiff would deter a person of ordinary firmness from engaging in such conduct.

65. That a causal connection exists between Plaintiff's protected speech and the adverse action.

66. That Defendant would not have taken the same adverse actions against Plaintiff in the absence of Plaintiff's protected speech.

67. That Defendant is not entitled to qualified immunity.

68. That Plaintiff's right to freedom of speech is clearly established.

69. That Defendant's actions constitute free speech retaliation in violation of the First Amendment, 42 U.S.C. § 1983.

70. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

71. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification,

embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

72. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT II – DENIAL OF PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

73. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 53 of his Common Allegations and paragraphs 54 through 72 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

74. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

75. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

76. That "[a] public employee is entitled to procedural due process—including the opportunity for a hearing—and substantive protections if he stands to lose a constitutionally protected property interest or liberty interest." *Houchens v. Beshear*, 441 F. Supp. 3d 508, 517 (E.D. Ky. 2020).

77. That at all times material hereto, Defendant acted under the color of State law.

78. That at all times material hereto, Plaintiff had a property interest in his continued employment.

79. That Defendant interfered with Plaintiff's property interest in his continued employment by securing Plaintiff's placement on the Genesee County *Brady-Giglio* list by falsely accusing Plaintiff and others of lying during investigations into Sgt. Chiros' improper and unlawful behavior.

80. That Defendant interfered with Plaintiff's property interests without providing any due process.

81. That when a protected property interest is implicated, "the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570; 92 S. Ct. 2701 (1972).

82. That Defendant is not entitled to qualified immunity.

83. That Plaintiff's property interests and Plaintiff's right to some kind of hearing prior to the infringement upon Plaintiff's property interest were clearly

established.

84. That Defendant's actions constitute a denial of procedural due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

85. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

86. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

87. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with

any and all legal and/or equitable relief this Court deems just.

## **COUNT III – DENIAL OF EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**

88. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 53 of his Common Allegations, paragraphs 54 through 72 of Count I, and paragraphs 73 through 87 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

89. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

90. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

91. That at all times material hereto, Defendant acted under the color of State law.

92. That at all times material hereto and by virtue of his reports of Sgt. Chiros' unlawful behavior and his participation in the related internal affairs investigation, Plaintiff belonged to an identifiable group of troopers.

93. That Defendant systematically retaliated against members of that identifiable group, subjecting them to disparate treatment.

94. That Defendant treated the identifiable group differently than similarly

situated troopers outside the identifiable group.

95. That Defendant lacked a rational basis for the different treatment.

96. That Defendant pursued the disparate treatment for unlawful and unethical purposes in violation of the Michigan State Police rules and regulations and with the intent to retaliate and harm Plaintiff and other members of said identifiable group.

97. That as part of that disparate treatment, Defendant took adverse action against Plaintiff, including, but not limited to, securing Plaintiff's placement on the Genesee County *Brady-Giglio* list.

98. That Defendant is not entitled to qualified immunity.

99. That Plaintiff's equal protection right to be treated similar to those in similar positions and without irrational adverse action is clearly established.

100. That Defendant's actions constitute a denial of equal protection of the law in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

101. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as

15
THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

a result of recovery.

102. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

103. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV – DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983

104. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 53 of his Common Allegations, paragraphs 54 through 72 of Count I, paragraphs 73 through 87 of Count II, and paragraphs 88 through 103 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

105. That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured

by the Constitution shall be liable to the injured party at law or in equity.

106. That the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; *see also Bazzetta*, 430 F.3d at 801.

107. That the Due Process Clause of the Fourteenth Amendment protects a citizen's right to be free from government actions that shock the conscience and from arbitrary and capricious government actions. *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).

108. That Defendant engaged in a scheme to retaliate against individuals who reported Sgt. Chiros' unlawful and unethical conduct and participated in the internal affairs investigation into Sgt. Chiros' behavior.

109. That Defendant was motivated by her personal relationship with Sgt. Chiros and sought to intentionally harm those that crossed either of them or their compatriots.

110. That Defendant further made false accusations that Plaintiff and other individuals who reported Sgt. Chiros' unlawful and unethical behavior and participated in the internal affairs investigation had lied during said investigation and/or fabricated their statements to the Michigan State Police.

111. That by doing so, Defendant caused Plaintiff and several individuals to

be inappropriately placed on the Genesee County *Brady-Giglio* list and Plaintiff to be subjected to criminal investigation.

112. That Defendant's actions shock the conscience and violate the decencies of civilized conduct.

113. That Defendant's actions are so offensive that they do not comport with the traditional ideas of fair play and decency.

114. That Defendant intended to injure Plaintiff and others.

115. That Defendant's actions were premeditated and intentional.

116. That Defendant is not entitled to qualified immunity.

117. That Plaintiff's right to be free from conscience-shocking governmental action and/or arbitrary and capricious governmental action is clearly established.

118. That Defendant's actions constitute a denial of substantive due process in violation of the Fourteenth Amendment, 42 U.S.C. § 1983.

119. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, raises, promotions, bonuses, insurance benefits, disability benefits, pension and/or retirement benefits, employer contributions, and any other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

120. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, mortification, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

121. That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: August 9, 2024    By:    /s/ Victor J. Mastromarco, Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, MERIK WHIPPLE, by and through his attorneys, THE MASTROMARCO FIRM, and hereby demand a trial by jury on all the above issues, unless otherwise expressly waived.

                                                      Respectfully submitted,
                                                      THE MASTROMARCO FIRM

Dated: August 9, 2024        By:   */s/ Victor J. Mastromarco, Jr.*
                                                   VICTOR J. MASTROMARCO, JR. (P34564)
                                                   KEVIN J. KELLY (P74546)
                                                   Attorneys for Plaintiff
                                                   1024 N. Michigan Avenue
                                                   Saginaw, Michigan 48602
                                                   (989) 752-1414